UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05 CR 155 CAS |
| ) | DDN |
| DAN HOGAN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 14, 2005.

Defendant Dan Hogan has moved to suppress evidence (Doc. 24). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On February 10, 2005, a 16-year-old male named N.G. made a complaint to the Jennings, Missouri, police department that defendant Dan Hogan had had sexual activity with N.G. and had taken sexually-oriented photographs of N.G. Jennings Detective David Joyce provided N.G.'s information to Federal Bureau of Investigation Special Agent Ann Pancoast.

2. On February 15, 2005, Agent Pancoast applied to Magistrate Judge Frederick R. Buckles for three search warrants in the investigation of Dan Hogan. The search warrants were for Hogan's residence at 7030 Manette, in Flordell Hills, Missouri; Hogan's 1997 Mercury Cougar automobile; and the business portion of a photographic studio at 2001 Russell Blvd., in the City of St. Louis.

3. In support of the issuance of a search warrant for 7030 Manette, Agent Pancoast submitted her sworn, written affidavit. In her affidavit Agent Pancoast described the information provided by Det.

Joyce. The affidavit stated that Joyce received the information from Police Officer Dustin Blake, who had received the information from N.G. initially on February 10, 2005. N.G. supplemented his complaint with two written statements on February 10 and 11, 2005. This information was that Dan Hogan, a janitor at the high school where N.G. attended, had repeatedly sodomized N.G. inside Hogan's residence at 7030 Manette from April 2004 through February 8, 2005. The affidavit recounted how the relationship between N.G. and Hogan began, that Hogan hired N.G. to work for Hogan's floor refinishing company, that Hogan performed oral sex on N.G. on several occasions, that N.G. described specific physical characteristics of Hogan's body and the interior of his residence, that together they selected and Hogan purchased a Nikon digital camera, a photo printer and at least two memory cards for the digital camera with which Hogan photographed N.G. nude, that the photographs exhibited N.G.'s genitals, and that N.G. knew Hogan kept the camera and the memory cards for it both in his residence and in his 1997 Mercury Cougar automobile. The affidavit also provided information about the Lokitz Photography studio at 2001 Russell Blvd., in St. Louis. The agent's affidavit also stated that Det. Joyce stated that Hogan took N.G. to this photography studio where Hogan paid studio owner Lokitz to take sexually explicit photographs of N.G. in a leather bondage outfit, a dog collar, a pair of yellow Tommy Hilfiger girl's shorts, blue nylon shorts with a yellow mesh strip on the side, and a penis ring, all of which were retained by Hogan. The affidavit also stated that N.G. had said that a pair of gray thong underwear was left at Hogan's residence by N.G. following one of their sexual encounters. Agent Pancoast's affidavit also described information that corroborated that Hogan resided at 7030 Manette. She also recounted that on February 14, 2005, N.G. pointed out to her the locations where Hogan assaulted him and photographed him in sexually explicit poses, and he identified Hogan's Mercury Cougar automobile. See Gov. Ex. 1, Application and Affidavit for Search Warrant.

4. Upon this affidavit, at 11:05 a.m., February 15, 2005, Judge Buckles issued a search warrant for 7030 Manette to search for 14 items, which included any and all digital cameras, memory cards, and other

specifically described digital, electronic forms of visual depictions of child pornography; any and all records pertaining to visual depictions of minors engaged in sexually explicit conduct; copies and negatives of visual depictions of minors engaged in sexually explicit conduct; records and materials identifying persons producing visual depictions of minors in sexually explicit conduct; records of communications between individuals concerning child pornography; records of the occupancy or ownership of 7030 Manette; records of the ownership or use of any digital camera and paraphernalia; all cameras, film, videotapes or other photographic equipment; diaries and other records of personal contact and other activities with minors visually depicted while engaged in sexually explicit conduct; "any yellow Tommy Hilfiger brand shorts"; "[a]ny navy blue shorts with a gold stripe on the side"; "[a]ny gray thong underwear"; "[a]ny leather harness outfits or dog collars"; and "[a]ny penis ring". Id., Search Warrant Attachment A, Items To Be Seized.

5. Also on February 15, 2005, Special Agent Pancoast submitted her written, sworn affidavit to Judge Buckles for the issuance of a search warrant for 2001 Russell Blvd., described as the location of a business, Lokitz Photography, which was located on the first floor of the building, with an apartment located on the second floor. Aside from the description of the place to be searched, this affidavit repeated the same information that was contained in the affidavit for 7030 Manette. As to 2001 Russell, Agent Pancoast's affidavit recounted the statements of N.G. to Det. Joyce that Hogan paid Scott Lokitz to take nude photographs of N.G. exhibiting his genitals, in a leather bondage outfit with sexual paraphernalia, and wearing the items as described in the other affidavit. The affidavit described eight categories of items to be seized from the business premises of the location. See Gov. Ex. 3, Application and Affidavit for Search Warrant.

6. On February 15, 2005, at 11:10 a.m., Judge Buckles issued his search warrant for the business portion of 2001 Russell Blvd. to search for eight categories of items relating to the photographing of N.G. and any other minor in the photo studio while engaging in sexually explicit conduct. See Gov. Ex. 3, Search Warrant Att. A Items to be Searched.

On February 15, the search warrant for the photo studio was executed. From it were seized 26 photographs and an invoice issued by the business. Gov. Ex. 3a. The photographs included pictures of N.G. and minor subjects other than N.G.

     7.    On February 15, 2005, F.B.I. Special Agent Candace Wessells submitted her sworn, written affidavit to Judge Buckles for the issuance of a search warrant to search Hogan's 1997 Mercury Cougar. Her affidavit contains the same information about the activities of Hogan and N.G. found in the affidavits submitted by Agent Pancoast, except that Agent Wessells's affidavit specifically describes and identifies the automobile as the place to be searched. Regarding the automobile, the affidavit recounts the statements of N.G. to Det. Joyce that Hogan has kept the digital camera and memory cards both in the residence and in the automobile. <u>See</u> Gov. Ex. 2 Application and Affidavit for Search Warrant.    8.    On February 15, 2005, at 11:15 a.m., Judge Buckles issued his search warrant for the 1997 Mercury Cougar to authorize a search for three categories of items: any and all digital cameras and memory cards, all original photographs and copies depicting minors engaged in sexually explicit conduct, and records of the ownership and occupancy of the vehicle. <u>See</u> Gov. Ex. 2 Search Warrant Att. A Items to be Searched.

     9.    All three search warrants were executed on February 15, 2005. Agent Pancoast and other officers and agents went to 7030 Manette. Once there, Agent Pancoast went to the front door, knocked, and announced, "Federal agents with a search warrant." When there was no answer to the announcement, Agent Pancoast used the door key provided by N.G. and opened the front door. The agents and officers entered the residence. They executed the search warrant and inventoried 26 items that were seized, including one Sentry safe with a digital keypad. These items are described in the inventory of items attached to the Return filed on April 13, 2005. Gov. Ex. 1a. When the search was concluded, the law enforcement personnel left a copy of the search warrant on the premises and departed. No one came to the residence during the search.

     10.    Based upon the nature of the items seized at 7030 Manette, a "wanted" alert was issued by the police.

11. On February 16, 2005, the Jennings police located Hogan's Mercury Cougar in front of 7030 Manette and so advised Agent Pancoast. She proceeded to 7030 Manette, arriving at approximately 4:15 p.m. She found that Hogan had been arrested by the police and placed in a police vehicle. Agent Pancoast went to the police vehicle and told Hogan that she had a search warrant for his automobile and she handed him a copy of the warrant.

12. Agent Pancoast then proceeded to search Hogan's Mercury Cougar. In the trunk she found and seized a high school folder inside of which were two lawn care business cards, a pen, and a piece of paper with a name and telephone numbers on it. Gov. Ex. 2a. When the search was completed, the agent wrote a receipt for the items seized, gave it to Hogan, and asked him to sign it, which he did. When Hogan saw the two business cards, without being asked any questions, he told Agent Pancoast, "I know him."

13. On February 16, 2005, Agent Pancoast applied to the undersigned Magistrate Judge for a search warrant to search the gray Sentry safe that had been seized from 7030 Manette. In support of a search warrant, Agent Pancoast submitted her sworn, written affidavit. This affidavit contained probable cause information that was substantially identical to that contained in the affidavit submitted for 7030 Manette, except that this new affidavit described the safe and contained information that the safe was seized during the execution of the search warrant for 7030 Manette. The affidavit also described some of the other seized items, which indicated the photographing of N.G. nude. See Gov. Ex. 4, Application and Affidavit for Search Warrant. On February 16, 2005, at 11:00 a.m., the undersigned issued a search warrant for the safe to search for eleven categories of items. See Gov. Ex. 4, Search Warrant Att. A Items to be Searched.

14. Later on February 16, the warrant was executed. The safe was opened and ten items were seized from it. Gov. Ex. 4a.

## DISCUSSION

The motion to suppress evidence should be denied. The items seized from 7030 Manette, the 1997 Mercury Cougar, the gray Sentry safe, and the business portion of 2001 Russell should not be suppressed.

Defendant's ownership and control interests in his residence at 7030 Manette, his Mercury Cougar automobile, and the Sentry safe seized from his residence, establish reasonable and subjective expectations of privacy in these locations, United States v. Salvucci, 448 U.S. 83, 86-87 (1980); Rakas v. Illinois, 439 U.S. 128, 134 (1978), which provided him with a constitutional entitlement to complain that the seizures of evidence from them violated the Fourth Amendment.

However, nothing in the record indicated that defendant had any ownership or control interest in, or any other basis for a reasonable and subjective expectation of privacy in, the business portion of the photography studio at 2001 Russell. Therefore, defendant does not have standing to complain about the seizure of items from that location. United States v. Nadler, 698 F.2d 995, 999-1000 (9th Cir. 1983).

The search warrants for defendant's residence at 7030 Manette, for the business portion of 2001 Russell, for his Mercury Cougar automobile, and for the gray Sentry safe seized from the residence were lawfully issued. The issue before this court when reviewing the legal sufficiency of the basis for the issuance of a search warrant is whether the issuing judge had a substantial basis for concluding that probable cause[1] existed for the issuance of the warrant. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

In this case, Judge Buckles's determinations that probable cause existed is supported by a substantial basis in each case. The first person statements by N.G. to the police and restated to the federal agents were reliable. They were corroborated in several important respects by the police, all as set forth in the affidavits. Regarding

---

[1] Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

the search warrant for the safe seized in the residence, the undersigned has reconsidered the affidavit submitted by Agent Pancoast and the undersigned stands by the finding of probable cause made when the search warrant was issued. The safe was found in the residence, along with evidence of defendant's activity with child pornography. It was reasonable that evidence of such criminal activity would be secreted in defendant's safe located on the same premises.

Defendant argues that the scope of the search warrants impermissibly authorized the seizure of visual depictions of minors, other than only N.G., engaged in sexually explicit conduct. At the hearing, the United States indicated that such evidence involving other minors was seized.

The undersigned concludes from the record that the scope of the search warrants was not impermissibly broad because the warrants commanded the seizure of items that related to other minors besides N.G. Defendant's acts described by N.G. occurred while defendant was employed as a janitor at N.G.'s high school and these acts occurred repeatedly with N.G. over a fifteen month period of time. Therefore, it was reasonable for the issuing judges to believe that evidence that defendant committed the same criminal acts with other minors besides N.G. would be located in the same places.

The evidence seized from the photo studio business premises at 2001 Russell Blvd. should not be suppressed, because, as set forth above, the undersigned concludes from the record that defendant does not have standing to complain of the seizure of items from that location.

The only statement of defendant evidenced during the pretrial hearing should not be suppressed. The statement "I know him" (Finding 13) was not made in response to any questioning.[2] Therefore, it is not rendered inadmissible because law enforcement had not by that time advised defendant of his constitutional rights to remain silent and to

---

[2] Clearly the statement was made at a time defendant was in custody. However, the search warrant affidavits for the residence, the automobile, and the photography studio clearly established probable cause for defendant's arrest. United States v. Nevils, 897 F.2d 300, 309 (8th Cir.)(probable cause to arrest established by search warrant affidavit), cert. denied, 498 U.S. 844 (1990).

counsel, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966), before custodial interrogation can constitutionally occur. See United States v. Hatten, 68 F.3d 257, 261-62 (8th Cir. 1995), cert. denied sub nom. Hatten v. United States, 516 U.S. 1150 (1996).  Nothing in the record indicates that this statement was coerced from defendant.  Thus, it was voluntary.  Colorado v. Connelly, 479 U.S. at 169-70; United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998), cert. denied, 526 U.S. 1010 (1999).

Whereupon,

**IT IS HEREBY RECOMMENDED** that the motion of defendant to suppress evidence (Doc. 24) be denied.

The parties are advised they have ten (10) days to file written objections to this Report and Recommendation.  The failure to file objections may result in a waiver of the right to appeal issues of fact.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed this day, April 19, 2005.